**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**MICHAEL BEARDEN**                                                                                               **PLAINTIFF**

**VS.**                                                **NO. 1:05cv72**

**DUDLEY LEMON, individually and in his official**
**capacity as the Sheriff of Cleburne County**                                                 **DEFENDANTS**

### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants motion affirmatively shifts to the Plaintiff the burden to offer sufficient probative evidence that would permit a finding in his favor.

### At-Will Employment

Plaintiff acknowledges that the County has established at-will employment as the employment policy of the County, and that Plaintiff is an at-will employee.

The Notice of Employment Termination provided by Sheriff Lemon stated::

### NOTICE OF EMPLOYMENT TERMINATION

DATE:         12/27/04

TO:             Michael Bearden, Deputy Sheriff

FROM:        Dudley Lemon, County Sheriff

**Reason for Notice:**  This notice is given to inform you of my decision to terminate your employment with the County, to state the basis for the decision, and to advise you of your opportunity to a hearing.

**Effective Date:**  Today, subject to your right to request a hearing before the County Grievance Committee, as explained below.

**The Reasons:**  I have talked to you before about your overzealous desire to write traffic tickets.  I have told you that I did not hire you to serve as a traffic officer.  I have told you that I do not want deputies patrolling the City of Heber Springs, especially not for the purpose of writing traffic tickets.  We do not have enough resources to serve primarily as traffic ticket writers.  We need to be

patrolling the county, and leaving to the City of Heber Springs Police Department the streets of Heber Springs.  The City of Heber Springs has as many officers on duty at night for the city limits as we do for the entire County.  We are letting the people down if we do not get out in the County and patrol where the city officers do not patrol.  It is not my objective as the Sheriff to see how may traffic tickets we can write.  I have told you that but you insist on writing traffic tickets, many of which are in the City of Heber Springs.  During the campaign, I talked to a lot of citizens.  There were many complaints about you reported to me.  People not only complained about the fact that you were patrolling the City of Heber Springs looking for traffic violations but that you were perceived as spending way too much time at E-Z Mart.  The good folks in this County want us out in the County patrolling.  They want to see County Deputy patrol cars driving by.  I agree with them and I intend to hire a person who shares my philosophy.  I suggest that you apply for employment in the traffic division of a city police department.

**Hearing Opportunity:**  County personnel policy provides that employees may request a public "Predeprivation Hearing" within 3 (three) full business days of any separation.

**Hearing Request:**  Any hearing request should be delivered to the County Grievance Committee in care of the County Judge no later than 4:30 p.m. on the third full business day (weekends and holidays excluded) after any claim deprivation for which a grievance hearing is requested.  You are an at-will employee.  At-will employment can be terminated at the will of the employer for a good reason or for no reason, but not for a bad reason.  A bad reason is a reason that violates the law or the constitution.  If you think the decision to terminate your employment is illegal or unconstitutional, you may ask the County Grievance Committee to enforce the county employment policy that prohibits an elected official from violating the law or the constitution.  If a hearing is held, we will tell the County Grievance Committee (which is the Quorum Court sitting as the County Grievance Committee) the factual basis for our loss of confidence in you.

If you have questions concerning County Employment Policy, you may contact the office of the County Judge or the County Civil Attorney.

cc:     County Judge
        County Civil Attorney

The effective date of the Sheriff's Decision was: "Today, subject to your right to request a hearing before the County Grievance Committee ... ." Mr. Bearden was told that he had the option to ask the County Grievance Committee to make the final decision, to wit: "If you think the decision to terminate your employment is illegal or unconstitutional, you may ask the County Grievance Committee to enforce the county employment policy that prohibits an elected official from violating

the law or the constitution." Mr. Bearden exercised his right to ask the County Grievance Committee to make the final decision. At that point the Sheriff became a witness. As stated in the Notice, the Sheriff appeared and "t[old] the County Grievance Committee (which is the Quorum Court sitting as the County Grievance Committee) the factual basis for [his] loss of confidence in [Mr. Bearden]". After hearing both sides of the story, the County Grievance Committee made its decision and Mr. Bearden's county employment was terminated.

The County Grievance Committee Hearing transcript is attached to the Defendants' Statement of Indisputable Material Facts filed contemporaneously herewith (and is summarized *in toto* therein).

**Plaintiff was not deprived of life, liberty, or property**
***without due process of law*** **and there is, therefore, neither**
**any viable U.S. Civil Rights Act of 1871 claim (42 U.S.C. 1983)**
**nor any any viable Arkansas Civil Rights Act (Ark. Code Ann. 16-123-107) claim.**

Whether an employee has a property interest in his or her employment is determined by state law, local ordinances, or contract -- not by the United States Constitution. An employee who has a property interest in employment is entitled to notice and a hearing *before* that employee's property interest in his employment is taken from him. Board of Regents v. Roth, 408 U.S. 564 (1972); Perry v. Sindermann, 408 U.S. 593 (1972); and Cleveland Board v. Loudermill, 105 S.Ct. 1487 (1985). Since Plaintiff was an at-will employee, Plaintiff had no property interest in his employment. Plaintiff admits this.

Liberty rights are found in the law and the Constitution itself (e.g., the Bill of Rights). If a Cleburne County employee contends that his employment is about to be terminated for an unconstitutional or illegal reason, the employee has the option of asking the County Grievance

Committee to hear both sides of the story and then determine if the executive branch county official's planned decision is for an unconstitutional or illegal reason. Plaintiff Bearden was offered a hearing opportunity for the expressed purpose of allowing Mr. Bearden to "ask the County Grievance Committee to enforce the county employment policy that prohibits an elected official from violating the law or the constitution." The hearing afforded was a pre-deprivation hearing. The decision of the Sheriff was not the final decision. The Notice of Employment Termination stated:

> **Effective Date:** Today, *subject to your right to request a hearing before the County Grievance Committee, as explained below*.

(emphasis added). The Notice explained that a predeprivation hearing was available:

> **Hearing Opportunity:** County personnel policy provides that employees may request a public "*Predeprivation Hearing*" within 3 (three) full business days of any separation.

(emphasis added). If a hearing is requested, the decision of the county executive branch official is not effective until the hearing process is concluded and the County Grievance Committee makes the final decision. The Notice explained that the role of the County Grievance Committee was empowered with the authority to make the final decision, and that the issue would be whether the Sheriff's planned decision violated the County's policy -- which prohibits an executive branch official from terminating employment for a reason that is unconstitutional or illegal. The Notice said:

> **Hearing Request:** ... If you think the decision to terminate your employment is illegal or unconstitutional, you may ask the County Grievance Committee to enforce the county employment policy that prohibits an elected official from violating the law or the constitution.

A pre-termination hearing process serves as an "initial check against mistaken decisions--essentially,

a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." <u>Loudermill</u>, 470 U.S. at 545-46, 105 S.Ct. at 1495. Mr. Bearden asked for such a hearing, and Mr. Bearden appeared and presented his evidence -- all of which is summarized in the County Defendants Statement of Indisputable Material Facts. The Sheriff offered his reasons. The County Grievance Committee rendered its decision. The Plaintiff did not sue the County Grievance Committee and has testified that he agrees with the County Grievance Committee's decision. Any deprivation now claimed by Mr. Bearden was (as a matter of law) a deprivation *with* due process, rather than a deprivation *without* due process of law.

      Plaintiff contends that his due process rights were violated because "Defendant Lemon terminated Plaintiff for protesting and disagreeing with a policy not prosecuting DWIs." Paragraph 14 of Complaint." The issue in procedural due process is "notice of the charges against [the employee], an explanation of the employer's evidence, and an opportunity to present [the employee's] side of the story." <u>Loudermill</u>, 470 U.S. at 546, 105 S.Ct. at 1495. Plaintiff Bearden could not have failed to know that his job was in jeopardy. That was the purpose of the Notice of Employment Termination -- to give "notice of the charges against [the employee], an explanation of the employer's evidence, and an opportunity to present [the employee's] side of the story." <u>Loudermill</u>, <u>supra</u>. Plaintiff had ample opportunity to state his side of the story. He explained his side of the story. He had the opportunity to present any evidence of information he desired to present and told the County Grievance Committee that thought his employment was being terminated because he had ruffled feathers at the sheriff's department by arresting retired police officers, constables, officer's wives, a state trooper's mother-in-law and his own friends for criminal offenses/DWI's. Bearden Depo. 23.1, 24.19; Page 39 of the County Grievance Committee

  To the extent that Plaintiff's arguments attack the merits of the Committee's decision, the duty of the Court is decline to review the decision. It is not the function of the judicial branch of the federal government to second-guess the merits of the county's decision to discharge the Plaintiff. The court's role is limited to determining whether he received the process he was due under the Constitution or the law. A due process violation does not occur simply because the aggrieved employee is not satisfied with the outcome of the grievance hearing. A court's function is to decide whether a plaintiff received adequate due process protection. "In short, once it is determined that the Due Process Clause applies, 'the question remains what process is due.' " Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). The court reviews the process afforded to the plaintiff; not the merits of the decision rendered. The Notice and the County Grievance Committee Hearing satisfied due process requirements, and the final decision by the County Grievance Committee did not therefore violate due process. The County Grievance Committee Hearing was the equivalent of a full adversarial evidentiary hearing. He had the opportunity to be represented by counsel, introduce evidence, and cross-examine witnesses. All of this process was pursuant to a written employment policy that provides adequate notice of the procedural safeguards afforded by the available hearing process. The hearing gave Plaintiff Bearden an adequate opportunity to persuade the committee. The Plaintiff has not sued the Committee and has even testified that he agrees with the decision of the Committee. Any claim Plaintiff that he was deprived of his "liberty" is a claim that he was deprived of his "liberty" <u>with</u> due process of law. Thus, there has been no Fourteenth Amendment violation. The County Grievance Committee

hearing transcript evidences a factual basis for the Committee's decision. The decision was not arbitrary. There is no deprivation of substantive due process. A local government employee's claim that he engaged in constitutionally protected activities does not insulate the employee from discipline or dismissal for "other justifiable reasons." Mt. Healthy City School Dist. v. Doyle, 429 U.S. 274 (1977).

Plaintiff has also included an Arkansas Civil Rights Act claim. Ark. Code Ann. 16-123-105(a) states:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured . . . " (emphasis added).

Ark. Code Ann. 16-123-103 provides:

> A defendant may avoid liability under this subsection [the Arkansas Civil Rights Act] by showing that his actions were based on legitimate, nondiscriminatory factors.

As evidenced by the accompanying Statement of Indisputable Material Facts, Plaintiff's employment was terminated was based on legitimate, nondiscriminatory factors, determined after hearing all evidence that was offered by both the Plaintiff and the Sheriff. There is nothing fundamentally wrong with, or unconstitutional about, the sheriff replacing Plaintiff with an officer whom he believed would spend more time patrolling the county looking for person and property crimes and less time patrolling the city streets and state highways looking for traffic law violators. This is a legitimate executive branch decision. The matter has already been heard, and the court should not now step into the shoes of the County Grievance Committee and undo the decision that has been made -- especially when Plaintiff has testified that he finds no fault with the decision of

the County Grievance Committee.

### Plaintiff's employment was not terminated in violation of Arkansas law.

Generally, the law in this state is that an employer or an employee may end an employment relationship at will. St. Edward Mercy Med. Ctr. v. Ellison, 58 Ark. App. 100, 946 S.W.2d 726 (1997). Under the employment-at-will doctrine, an at-will employee may be discharged for good cause, no cause, or even a morally wrong cause. Id. The Arkansas Supreme Court has recognized a limited public policy exception to the at-will doctrine and has held "that an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state." Sterling Drug, Inc. v. Oxford, 294 Ark. 239, 249, 743 S.W.2d 380, 385 (1988). To determine the public policy of this state, the Court is to look to the State's statutes and constitution, Sterling Drug, Inc. v. Oxford, supra, because public policy is declared by the General Assembly, and not the Court. Davis v. Ross Prod. Co., 322 Ark. 532, 910 S.W.2d 209 (1995); Nabholtz Constr. Corp. v. Graham, 319 Ark. 396, 892 S.W.2d 456 (1995).

General Employment Policies are those adopted by the Quorum Court as the legislative branch of County Government. "A county acting through its Quorum Court may exercise local legislative authority not denied by the Constitution or by the law." Subsection 1(a) of Amendment 55. The quorum court may "adopt ordinances necessary for the government of the county." Section 4 of Amendment 55. A county government, acting through its county quorum court, may exercise local legislative authority not expressly prohibited by the Arkansas Constitution or by law for the affairs of the county. These powers include, but are not limited to, the power to: i) fix the number and compensation of deputies and county employees; ii) fix the compensation of each county officer within a minimum and maximum to be determined by law; exercise other powers, not inconsistent

with law, necessary for effective administration of authorized services and functions. A.C.A. 14-14-801. The Quorum Court's legislative power expressly includes "any legislative authority with regard to employee policy and practices of a general nature, including, but not limited to, establishment of general vacation and sick leave policies, general office hour policies, general policies with reference to nepotism, or general policies to be applicable in the hiring of county employees. A.C.A. 14.14-805(2). These constitutional and statutory provisions charge the quorum court with responsibility for shaping general policy on such uniformly applicable issues as leave and vacation time and normal working hours. This assignment of responsibility is consistent with the quorum court's role as the guardian of the public fisc. A.C.A. § 14-14-1102(b)(5)(B)(ii)(b); Ark. Op. Att'y Gen. No. 97-049.

Executive Employment Policies are those that apply only to the employees of that office in the course of administering "[t]he day-to-day administrative responsibility" of his or her elected office. A.C.A. § 14-14-805(2). An elected official can create and administer his own employee discipline measures, subject, however, to the condition that these cannot contravene these general, uniformly applicable measures adopted by the quorum court. Ark. Op. Att'y Gen. No. 2000-151.

In Heck v. Humphrey, 114 U.S. 129, 129 L.Ed. 383 (1994), the court was called upon to consider the "question posed by 1983 damage claims that do call into question the lawfulness of conviction or confinement." Heck at 392. The Court then defined a test to determine whether a prisoner's § 1983 suit should be dismissed, stating:

> [W]hen a state prisoner seeks damages in a § 1983 suit, , the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the validity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck at 394. Although the petitioner (whose direct appeal from his conviction was pending) sought

monetary damages and made no request of an invalidation of his conviction, the Court affirmed the dismissal of his suit. The Court remarked:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck at 394.

The facts in Heck are not similar to those in the instant case. There has been no prior judicial determination called into question by the Plaintiff's complaint for damages. But, there is a prior County Grievance Committee determination called into question by the Plaintiff's complaint for damages. Since Plaintiff is not challenging the decision of the County Grievance Committee and is not suing the County Grievance Committee or its members, that decision should stand and Plaintiff's claim should be barred by the doctrine of estoppel. Heck at 396. (*See also* Schafer v. Moore, 46, F.3d 43 (8th Cir., 1995).

There are no disputed facts -- because there is a sworn, court-reported record of the County Grievance Committee Hearing. All of the facts considered in the decision to terminate Plaintiff's employment termination are in that indisputable record. That record is not a record of any discharge in violation of a well-established public policy of the state of Arkansas. Accordingly, Plaintiff's claim of wrongful discharge should be dismissed as a matter of law.

### Defendants have not committed any (so-called) "felony tort" and Defendants are entitled to the benefit of statutory tort immunity.

Plaintiff has no evidence supporting any claim that the Defendants have committed a felony

tort (whatever that is).  Plaintiff has no legal basis for asserting any purported "felony tort" claim.

To the extent Plaintiff is asserting a claim for any degree of negligence, Defendants are immune.  The Arkansas Tort Immunity Statute (Tort Liability - Immunity Declared) provides that:

> "It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, . . . and all other political subdivision of the state **shall be immune from liability and from suit for damages....**  No tort action shall lie against any such political subdivision because of the acts of their agents and employees."

Ark. Code Ann. § 21-9-301 (Michie 1996).

Thus, under state law, the County Defendants are "immune from liability and from suit" for the plaintiff's tort claims.  The immunity granted to a county extends to the county's officials and employees.  Matthews v. Martin, 280 Ark. 245, 658 S.W.2d 374 (1983) (emphasis added).  The presence of immunity is a functional test.  Autry v. Lawrence, 286 Ark. 501, 696 S.W.2d 315 (1985).  In other words, if officials or employees were performing their official duties for the county at the time of the alleged acts, they and the county are immune from any such tort liability under § 21-9-301.  Cousins v. Dennis, 298 Ark. 310, 767 S.W.2d 296 (1989) (emphasis added).

Because there is neither law nor facts to support Plaintiff's "felony tort" claim and because the Defendants are immune from tort liability, Plaintiff's complaint alleging a tort should be dismissed.

### The doctrine of qualified immunity applies to shield Dudley Lemon, individually, from any purported liability.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A court

required to rule upon the qualified immunity issue must first consider the threshold question of whether, construed in the light most favorable to the party asserting the injury, the facts alleged show the governmental official violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id. Only if a violation could be made out on a favorable view of the parties' submissions, does a court take the next step and ask whether the right was clearly established. Id. at 201.

In order to establish a constitutional violation, Bearden must show that his employment termination violated the due process clause of the Fourteenth Amendment. As explained above, Plaintiff has no alleged facts that, if true, show the Sheriffs' conduct violated a constitutional right. Plaintiff had no property right and any claimed liberty deprivation was *with* due process. "The Supreme Court has generously construed qualified immunity protection to shield all but the plainly incompetent or those who knowingly violate the law.'" Davis v. Hall, 375 F.3d 703, 711-12 (8th Cir. 2004) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). "'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" Id. at 712 (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)). "

On the facts taken in the light most favorable to Plaintiff Bearden, there has been no transgression of a "bright line," and certainly no transgression of a "bright line" constitutional right that is "clearly established." Accordingly, Defendant Dudley Lemon is entitled to the benefit of qualified immunity and the Complaint against him should be dismissed.

### The County is immune from Plaintiff's claim for punitive damages.

Recovery of punitive damages against local governments and its official is prohibited.

Newport v. Fact Concerts, Inc., 101 S. Ct. 1748 (1981).

                Respectfully submitted,

                DUDLEY LEMON, individually and in his official capacity as the Sheriff of Cleburne County, *County Defendants*

                RAINWATER, HOLT & SEXTON, P.A.
                P.O. Box 17250
                6315 Ranch Drive
                Little Rock, AR 72222
                Telephone (501) 868-2500
                Telefax (501) 868-2505
                Email: rainwater@duncanrainwater.com

      By:      /s/ Michael Rainwater
             Michael R. Rainwater, #79234

## CERTIFICATE OF SERVICE

     I hereby certify that on January 19, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Mr. Lucien Gillham
HARRILL & SUTTER, PLLC
Attorneys at Law
Plaintiff Office Box 21908
Little Rock, Arkansas  72221

                /s/   Michael Rainwater
                Michael Rainwater
                Attorney for Defendants
                RAINWATER, HOLT & SEXTON, P.A.
                P.O. Box 17250
                6315 Ranch Drive
                Little Rock, Arkansas  72222-7250
                Telephone (501) 868-2500
                Telefax (501 868-2505
                Email: rainwater@duncanrainwater.com

6653.2280