IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MICHAEL BEARDEN                                                              PLAINTIFF

VS.                              NO. 1:05CV00072JLH

DUDLEY LEMON, individually and in his official
  Capacity as the Sheriff of Cleburne County                     DEFENDANT

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW the Plaintiff, Michael Bearden, by and through counsel, Harrill & Sutter, P.L.L.C., who for the Brief in Support of his Motion for Summary Judgment, states:

Michael Bearden has filed claims for retaliation for exercise of First Amendment rights under 42 U.S.C. 1983, wrongful discharge in violation of public policy, and felony tort for being subjected to witness interference. Bearden was a deputy with the Cleburne County Sheriff's Office and was terminated because he resisted or refused to obey illegal orders to nolle pros DWIs, and protested the Sheriff's policy of not prosecuting DWIs. Under 42 U.S.C. 1983, Plaintiff must show that he was terminated, that he engaged in a protected activity, that the protected activity was a motivating factor in the termination decision, and that the Defendant was acting under color of law. For the County to be liable the decision must have been the result of an official policy or have been made by a policy-maker. Plaintiff moves for the Court to enter Partial Summary Judgment against Defendant, finding the following: That Sheriff Dudley Lemon, the policy maker on law enforcement and employment decisions at the Cleburne County Sheriff's Office, acting under color of law, terminated Michael Bearden.

ARGUMENT

I.      **Policy or custom – Sheriff Lemon is the policy maker on hiring and firing**

A county can be liable for the action of one of its employees or officials if that action reflects the official policy of the county. A single action can represent the official policy of a county "provided that a deliberate choice to follow a course of action was made from among

1

various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Buzek v. County of Saunders, 972 F.2d 992, 996 (8th Cir. 1992) (finding that a Nebraska Sheriff was the policy maker with respect to a termination decision). Whether an official has final policy-making authority is a matter of state law. Williams v. Butler, 863 F.2d 1398, 1401 (8th Cir. 1988).

Defendant is likely to argue that the County cannot be held liable because the Quorum Court Grievance Committee, not Sheriff Lemon, is the policy-maker on termination decisions. This argument fails because Arkansas law clearly makes the Sheriff the policy-maker with respect to the hiring and firing of employees at the Sheriff's office. Arkansas law states:

> (A) HIRING OF COUNTY EMPLOYEES, EXCEPT THOSE PERSONS EMPLOYED BY OTHER ELECTED OFFICIALS OF THE COUNTY. The county judge, as the chief executive officer of the county, shall be responsible for the employment of the necessary personnel or for the purchase of labor or services performed by individuals or firms employed by the county, or an agency thereof, for salaries, wages, or other forms of compensation.
> . . .
> (b) The jurisdiction to purchase the labor of an individual for salary or wages employed by other elected officials of the county shall be vested in each respective elected official.

Ark. Code Ann. 14-14-1102(b)(5).

The Attorney General of Arkansas has issued an opinion indicating that this statute means that a quorum court cannot take control of hiring and firing decisions with regard to employees working under an elected official, in particular a Sheriff, as follows:

> In my opinion, these constitutional and statutory provisions charge the quorum court with responsibility for shaping general policy on such uniformly applicable issues as leave and vacation time and normal working hours. This assignment of responsibility is consistent with the quorum court's role as the guardian of the public fisc. Nevertheless, as expressly stated in A.C.A. § 14-14-805(2), any such policies will not apply to elected officials. Moreover, it is clear that while the county judge has the power to hire county employees, other elected officials have exclusive power over hiring decisions in their own offices. A.C.A. § 14-14-1102(b)(5)(B)(ii)(b); Ark. Op. Att'y Gen. No. 97- 049 (attached). Elected officers are further charged with "[t]he day-to-day administrative responsibility" of running their offices, A.C.A. § 14-14- 805(2) - an obligation that in my estimation includes shaping employment policies necessary to insure the proper functioning of government.

*4* Indeed, to assign to the quorum court such executive policymaking decisions might well run afoul of Ark. Const. art. IV, §§ 1 and 2 and A.C.A. § 14-14-501, which dictate that the various branches of government operate independently of each other. See Karr v. Townsend, 606 F. Supp. 1121, 1132 (W.D. Ark. 1985) (declaring in dictum that it would violate the constitution for a quorum court to adopt a personnel policy that purported to restrict an executive officer's right to hire and fire his staff); cf. Walker v. Washington County, 263 Ark. 317, 564 S.W.2d 513 (1978) (holding that a quorum court ordinance that established uniform office hours for all constitutional offices did not violate the separation-of-powers doctrine); Ark. Op. Att'y Gen. No. 88-334 (same). As I opined in Ark. Op. Att'y Gen. No. 97- 310: "[T]he quorum court, as part of the legislative branch of government, cannot exercise an overruling influence over a county executive department official, or otherwise encroach upon or significantly interfere with executive powers." [FN1] See generally Chaffin v. Arkansas Game and Fish Commission, 296 Ark. 431, 757 S.W.2d 950 (1988); Oates v. Rogers, 201 Ark. 335, 144 S.W.2d 437 (1940); Ark. Op. Att'y Gen. 91-050. In my opinion, then, the personnel rules and regulations fashioned by elected officers to expedite their functions comprise "executive," as opposed to "general," employment policies, and only the elected officers themselves can dictate such policies.

Question 2: For example, may the elected official create and administer their [sic] own employee disciplinary measures? What if these are contrary to the quorum court's established personnel policies?

In my opinion, the answer to the first part of your question is "yes." Although one would hope these policies reasonably bear on the day-to-day functioning of the official's office, the only legal restraints on an executive officer's discretion in fashioning disciplinary measures are those discussed in detail in the attached Ark. Op. Att'y Gen. No. 97-049. See also Ark. Ops. Att'y Gen. No. 94-098 and 87-082. As previously noted, I believe the above described statutory scheme anticipates that the quorum court will dictate only such policies as apply generally to all county employees, as distinct from policies that bear uniquely on the functioning of a particular executive agency. I further agree with the district court in Karr that a quorum court cannot adopt even a uniformly applicable ordinance that would impinge on an elected officer's discretion in hiring and firing. **See Ark. Op. Att'y Gen. No. 87-312 (opining that the sheriff, not the quorum court, has exclusive authority to select deputies).** [emphasis added].

Question 3: May an elected official's employee handbook specifically state that their [sic] employees are at-will employees, even if the quorum court's personnel policy states that employees may only be dismissed for cause?

Although the Arkansas Supreme Court has never directly addressed this question, I believe the answer to your question is probably "yes." The general rule regarding at-will employment has been most recently stated in Ball v. Arkansas Department of Community Punishment, 340 Ark.424, 10 S.W.3d 873 (2000):

> In Arkansas, the general rule is that an employer or an employee may terminate an employment relationship at will. See Crain Indus., Inc. v. Cass, 305 Ark. 566, 810 S.W.2d 910 (1990); Gladden v. Arkansas

3

> Children's Hospital, 292 Ark. 130, 728 S.W.2d 501 (1987). There are two basic exceptions to the at-will doctrine: (1) where an employee relies upon a personnel manual that contains an express agreement against termination except for cause; and (2) where the employment agreement contains a provision that the employee will not be discharged except for cause, even if the agreement has an unspecified term. Gladden, 292 Ark. at 136.
>
> In my opinion, the authorities recited in the preceding sections establish that, absent a contractual provision to the contrary, an elected officer has control over hiring and firing his staff, subject only to the condition that he cannot fire employees for exercising their rights of free political speech and association. [FN6] As reflected in amendment LV, § 3, this principle is of constitutional proportions. Accordingly, in Horton, the court affirmed a district court's holding that a quorum court was constitutionally barred from dictating to a county judge that his employees could be fired only for cause. 767 F.2d at 473. I believe, this same conclusion applies to any other elected officer.

The facts of this case, as well as other case law and policy favor holding that the Sheriff is the policy-maker. Defendant may argue that the statute merely speaks about decisions to purchase labor, and says nothing about hiring or firing. However, the Sheriff and members of the quorum court were asked what it meant to have authority to "purchase the labor" of an individual. All were agreed that it meant the authority make a decision to employ or to not employ a particular individual. In other words, it means the ability to hire and fire. It is notable that this requirement is enshrined in the Defendant's own policy manual.

In Dilday v. State, 300 Ark. 249, 778 S.W.2d 618 (1989), the Arkansas Supreme Court noted that "it is clear under the common law that by the nature of the two offices, a sheriff is liable for the actions of his appointed deputies and has control over their selection and retention." In Thompson v. Bank of America, 356 Ark. 576, 157 S.W.3d 174 (2004), the Arkansas Supreme Court stated that:

> Although the General Assembly has the power to alter the common law, a legislative act will not be construed as overruling a principle of common law unless it is made plain by the act that such a change in the established law is intended.

Id., 356 Ark. at 584, 157 S.W.3d at 179. Thus, in order to find that the legislature intended to overrule the common law, granting Sheriffs, and not quorum court's, final power over the hiring and firing of deputies, the Court would have to find that the statute plainly intended to overturn

4

the established law. This cannot be done given that the statute pretty plainly gives Sheriff's the final power on hiring and firing decisions.

Indeed, this reasoning could also be applied to the quorum court's policy manual, to the extent that Defendants argue that the quorum court set itself up as the policy-maker on all employees not employed by the County Judge. Defendants' policy manual indicates that all employees are at will, that employees have no right to use the grievance procedure set up by their ordinance, and recognizes the Sheriff's jurisdiction to hire and fire. In <u>Faulkner v. Arkansas Children's Hospital</u>, 69 S.W.3d 393, 406 (Ark. 2002) the Supreme Court of Arkansas held that where a policy manual containing a grievance procedure repeatedly includes the phrase 'at will', there was no employment contract or other obligation to give effect to the grievance procedure. Given there was no clear effort to overrule the Sheriff's common-law authority to hire and fire employees, the quorum court did not do so. In any event, the quorum court does not have the power to overrule the state legislature, regardless of what the quorum court intended to do when it enacted the grievance policy.

Defendant may argue that dicta in <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483-484, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986), indicates that the Sheriff is not a final policy-maker, and that the quorum court is. However, that was merely a hypothetical posed by the Supreme Court in which it indicated that a Sheriff might be vested with discretion to hire and fire, but not be a final policy-maker, unless, in the instance of that hypothetical, in which the county quorum court had final say on such matters, had delegated power to establish final policy to the Sheriff. Since <u>Pembaur</u> was decided, the Eighth Circuit, in <u>Buzek</u>, held that the Sheriff's broad discretion to set policy as an elected official and the county attorney's admission that the Sheriff had exclusive power to hire and fire were sufficient to find the Sheriff was a policy-maker on employment issues. <u>Id.</u>, 972 F.2d at 996.

In this case, as described above, the Arkansas statutes grant the exclusive power to hire and fire to the Sheriff. In <u>Williams v. Butler</u>, 863 F.2d 1398 (8th Cir. 1988), the Eighth Circuit

5

held the City of Little Rock liable for a municipal judge's termination based on statutory authority:

> Another predicate for the City's liability is that the Arkansas General Assembly, Ark.Stat.Ann. § 22-704.1(45) (Supp.1985), authorized municipal judges to employ persons to fill staff positions in that court. As noted in *Pembaur* at 483, 106 S.Ct. at 1300 "authority to make municipal policy may be granted directly by legislative enactment." This places municipal judges in the City of Little Rock as the official policymaker in hiring and firing staff. And, Butler in his official capacity as a municipal judge was exercising traditional municipal functions. It does appear both by legislative enactment and by a long established custom and practice that Butler was the official policymaker for the hiring and firing of his staff.

Williams, 863 F.2d at 1403. In addition, although Defendant may argue that the statute only speaks about purchasing the labor of an employee, not terminating them, the Eighth Circuit also stated:

> This circuit, in applying an Arkansas statute in similar circumstances, has stated that when an official is vested with the right to hire, he or she also has "the concomitant duty to fire * * * employees." *Horton v. Taylor,* 767 F.2d 471, 474 (8th Cir.1985). Therefore, under state statute (and not through a delegation of authority from another City entity with employment policy powers) we know that Judge Butler had final authority to hire and fire Ms. Williams. And, it is the exercise of this discharge power that is at issue in this case.

Williams, 863 F.2d at 1404 (J. Beam concurring). Defendants have admitted that the quorum court cannot hire at the Sheriff's office, that only the Sheriff does that.

There are practical, policy-based rulings in favor of finding that the Sheriff is the policy maker on hiring and firing decisions. Defendants have stated that they would not want to violate the separation of powers between county executive and legislative branches. Defendants have also noted that even if the quorum court ordered reinstatement of an employee, the Sheriff could turn around and fire them the next day, or designate a deputy as Chief Toilet Cleaner, and essentially drive the person out of employment, regardless of what the quorum court wanted. Finally, the Sheriff is also given final policy-making authority over law enforcement areas (Ark. Code Ann. 14-14-1301(a)(5), 14-15-501; and Crowder v. Sinyard, 884 F.2d 804, 828 (5th Cir.

6

1999)), and Defendants have noted that in order to make policy in that area, he needs to be able to control his employees through hiring and firing.

II.     **Lemon terminated Bearden**

Furthermore, the facts of the case show that the Sheriff had control over this situation and that the quorum court had none. A grievance policy was issued that is in no way binding on the Sheriff, the quorum court, and the county in that it states: all employees are at will, no liberty or property rights are created by it, it is not a contract, and that it does not have to hold a pre-deprivation hearing. The quorum court was in a conflict of interest in that it represented the county, and could only find for Bearden if it essentially established a 42 U.S.C. 1983 case for wrongful discharge for Mr. Bearden. The quorum court deliberated only briefly and cannot recall why they found against Bearden. During that brief period, the county attorney was back with the quorum court pleading the Sheriff's case. Finally, the quorum court indicated that it would not give the Sheriff an illegal order. The Sheriff indicated that he would not take an illegal order and that he would only put Bearden back to work if he were legally required to do so, which neither the grievance policy nor the quorum court could require. The Sheriff also indicated that he and no one else made the termination decision.

For these reasons, Plaintiff requests that the Court find that Dudley Lemon, the Sheriff of Cleburne County, made the decision to terminate Plaintiff, as the official responsible for making employment policy in the County Sheriff's Department at the time the termination decision was made, and that the County can therefore be liable for that decision in the event Plaintiff shows Lemon had an illegal motivation.

II.     **Defendants were acting under color of law when they terminated Plaintiff**

"Acts are done under color of law when a person acts or purports to act in the performance of official duties under any state, county or municipal law, ordinance or regulation," *8th Cir. Civil Jury Instr.* 4.40 (2001). As described above, Sheriff Lemon is the policy-maker with respect to all law enforcement and employment decisions at the Sheriff's office. It was in

this capacity that he gave Mike Bearden the letter informing him that he was terminated.  The letter was on county letterhead, from the Sheriff, and stated that the Sheriff was going to hire someone who agreed with his philosophy.  Thus, the Court should find for Plaintiff on this issue as well.

> Respectfully submitted,
>
> HARRILL & SUTTER, P.L.L.C.
> Attorneys at Law
> Post Office Box 26321
> 310 Natural Resources Drive
> Little Rock, Arkansas 72221-6321
> 501/224-1050; Facsimile 501/223-9136
> Attorneys for the Plaintiff
>
>
> By: */s/ Lucien Gillham*
>       Lucien Gillham, Ark. Bar #99199

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of January 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to counsel for the Defendants:

Mike Rainwater
Duncan & Rainwater, P.A.
POB 17250
Little Rock, AR 72222-1725

> */s/ Lucien Gillham*
> Lucien Gillham

g:\doc\bearden\sjbr.doc