**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION**

MICHAEL BEARDEN                                                           PLAINTIFF

v.                                        No. 1:05CV00072 JLH

DUDLEY LEMON, Individually and in His
Official Capacity as the Sheriff of Cleburne County            DEFENDANT

### OPINION AND ORDER

Michael Bearden alleges that he was fired from his position as a Deputy Sheriff of Cleburne County in retaliation for exercising his right to free speech; that he was wrongfully discharged in violation of public policy; and that he was a victim of a felony tort, for which he cites Ark. Code Ann. § 16-118-107 and Ark. Code Ann. § 5-53-109. He brought this action against Dudley Lemon, individually and in his official capacity as the Sheriff of Cleburne County. He seeks back pay and front pay or reinstatement, compensatory damages, punitive damages, and an injunction. Dudley Lemon has moved for summary judgment on all claims. For the reasons stated hereinafter, summary judgment will be granted as to Michael Bearden's felony-tort claim but denied as to Bearden's other claims.

### I.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.

*Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## II.

Michael Bearden was employed by the Cleburne County Sheriff's Department from June 2000 until December 2004, first as a jailer, then as a deputy. On December 27, 2004, Lemon gave Bearden a "Notice of Employment Termination." The reasons for the termination, as stated in the notice, were that Bearden was overzealous in writing traffic tickets, which was contrary to the purpose of the county sheriff's office; that during Lemon's recent campaign for reelection to the position of sheriff, citizens had complained about Bearden patrolling the City of Heber Springs looking for traffic violations; and that citizens had complained about Bearden's spending too much time at E-Z Mart. The termination was effective that same day, subject to Bearden's right to request a hearing before the County Grievance Committee. The notice stated, "If you think the decision to terminate your employment is illegal or unconstitutional, you may ask the County Grievance Committee to enforce the county employment policy that prohibits an elected official from violating the law or the constitution."

The quorum court sits as the County Grievance Committee. The quorum court heard Bearden's grievance on January 10, 2005. At that grievance hearing, Lemon reiterated that the reasons for Bearden's discharge were those stated in the notice of termination. Bearden offered evidence to show that he had not been overzealous in writing traffic tickets and that other officers had written as many traffic tickets as he had but had not been terminated; and he also offered evidence in the form of testimony by Heber Springs policemen and others that he had not spent an excessive amount of time at E-Z Mart. At the conclusion of all the evidence, the quorum court deliberated and then voted that Bearden had failed to prove by a preponderance of the evidence that

his discharge was illegal or unconstitutional.

Thereafter, Bearden retained counsel and filed the complaint in this case.

### III.

Bearden's first claim is that he was discharged in retaliation for exercising his right to freedom of speech in violation of the First and Fourteenth Amendments to the Constitution of the United States and the corresponding provision of the Arkansas Constitution, which is Article 2, § 6. Bearden brings this action under the authority of 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993, codified in Ark. Code Ann. § 16-123-107.

Although the notice of termination stated that Bearden was terminated for being overzealous in writing traffic tickets and spending too much time at E-Z Mart, and although Lemon told the quorum court at the grievance hearing that those were the reasons for Bearden's termination, Lemon's testimony in this case shows that there is more to the story. In a lengthy answer to an interrogatory in this case, Lemon stated that during the campaign of 2004 he heard that "Bearden was out telling people that the Sheriff had an anti-DWI policy or that Bearden had been told not to write DWI's[.]" Similarly, in his deposition, Lemon confirmed that he had heard during the campaign that Bearden was telling people that he had a policy of not charging people and not prosecuting DWI's, or something to that effect. Lemon also confirmed in his deposition that part of the reason Bearden was terminated was that he had been saying that he had been told not to write DWI's.

Lemon denies that he had any policy against making arrests for DWI or pursuing prosecutions for DWI. Bearden has testified that his job was threatened because of the DWI's that he was writing, that he was told to *nolle pros* two of his DWI's, and that he arranged with the prosecutor to have those *nolle prossed* as he had been instructed; and that Lemon arranged with the

3

prosecutor for a third DWI to be *nolle prossed*; all of which arguably are in violation of Ark. Code

Ann. § 5-65-107(a), which provides, "Persons arrested violating § 5-65-103 [driving while

intoxicated] shall be tried on those charges or plead to those charges, and no such charges shall be

reduced." Bearden also testified that in September 2004 Lemon threatened his job because of DWI's

that he had been writing. At the grievance hearing, Lemon testified that there had been a meeting

in September 2004, but in his deposition he denied that such a meeting occurred.

The Supreme Court has held that the due process clause of the Fourteenth Amendment

incorporates the First Amendment and makes the First Amendment applicable to state and local

governments. *Fiske v. Kansas*, 274 U.S. 380, 387, 47 S. Ct. 655, 657, 71 L. Ed. 1108 (1927); *Gitlow*

*v. New York*, 268 U.S. 652, 666, 45 S. Ct. 625, 630, 69 L. Ed. 1138 (1925). The rights of public

employees under the First Amendment have been explained in *Pickering v. Board of Education of*

*Township High School District 205, Will County, Illinois*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed.

2d 811 (1968), and *Connick v. Meyers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). The

Eighth Circuit has summarized *Pickering* and *Connick* as follows:

> Courts addressing claims by public employees who contend that they have been
> discharged for exercising their right to free speech must employ a two-step inquiry.
> *Dunn v. Carroll*, 40 F.3d 287, 291 (8th Cir. 1994). First, the court must determine
> whether the speech may be described as "speech on a matter of public concern."
> [Citing *Connick v. Meyers*.] If so, the second step involves balancing the employee's
> right to free speech against the interests of the public employer. [Citations omitted.]
> The focus is on striking a balance between the interests of the [employee], as a
> citizen, in commenting on matters of public concern and the interests of the [public
> employer] in promoting the efficiency of the public services it performs through its
> employees. *Pickering*, 391 U.S. at 568, 88 S. Ct. at 1734. These two questions are
> matters of law for the court to resolve. *Dunn*, 40 F.3d at 291.

*Kincaid v. City of Blue Springs*, 64 F.3d 389, 395 (8th Cir. 1995); *see also Sexton v. Martin*, 210

F.3d 905, 910 (8th Cir. 2000). Here, when Bearden commented on the sheriff's alleged anti-DWI

4

policy, those comments related to matters of public concern in connection with the operation of the sheriff's department. Lemon does not argue to the contrary. Lemon disputes whether Bearden's comments were truthful, not whether they related to matters of public concern.

If Bearden's comments were true, as a matter of law his right to make those comments outweighs any concern for efficiency in the performance of public services. On the other hand, if his comments were intentionally false, the concern for efficiency in the performance of public services would outweigh Bearden's free-speech right to make those comments. *See Pickering*, 391 U.S. at 574, 88 S. Ct. at 1738. The efficient operation of a sheriff's department requires a certain level of public confidence. If deputies could with impunity lie to the public about policies of the sheriff's department on important matters such as making DWI arrests and prosecuting DWI's, then the efficient operation of the sheriff's department would be seriously undermined. Bearden says that his comments were true; the sheriff says that they were intentionally false. This is a classic dispute of fact; it must be submitted to the jury. Therefore, Lemon's motion for summary judgment on Bearden's claims that he was terminated in violation of his right to freedom of speech must be denied.

Lemon makes a number of arguments in an effort to avoid this conclusion. First, he argues that, because the Due Process Clause of the Fourteenth Amendment, read literally, permits liberty to be taken if due process is granted, the incorporation of the First Amendment into the Fourteenth Amendment means only that a state or local government cannot take a person's free speech rights without giving due process. Although the argument is logical enough from the standpoint of the literal language of the Due Process Clause, it is also contrary to innumerable cases from the United

States Supreme Court and the courts of appeal.[1]  In *Pickering*, for example, the teacher was given

a full hearing by the school board before being dismissed; yet, the Supreme Court held that his

dismissal violated the First Amendment as incorporated into the Fourteenth Amendment. *Id.* at 566-

67, 88 S. Ct. at 1734.

Lemon also argues that, even applying the *Pickering/Connick* factors, Bearden's discharge

was appropriate because "making DWI arrests is not the right to freely speak" and "in any event,

plaintiff was not prevented from making DWI arrests."  While making DWI arrests might not be

speech under the First Amendment, as noted above Lemon's answers to interrogatories and

deposition testimony confirm that Bearden's speech – his commenting on the sheriff's alleged anti-

DWI policy – was one of the reasons for Bearden's termination.

Lemon also argues that the Court should defer to the decision of the County Grievance

Committee, but it is difficult to see why.  Under Arkansas law, the quorum court is effectively the

legislative body for county government, just as the county judge is effectively the county

---

[1]Lemon fails to perceive the distinction between substantive due process and procedural due process.  The procedural protections of the Due Process Clause guarantee only that there is a fair decision-making process before the government takes some action.  Ronald D. Rotunda & John E. Nowak, 2 Treatise on Constitutional Law § 14.6, at 530 (3d ed. 1999). The First Amendment's incorporation into the Fourteenth Amendment's Due Process Clause, however, means that the *substantive* protections of the First Amendment are now applicable against state actors.  *Duncan v. Louisiana*, 391 U.S. 145, 148, 88 S. Ct. 1444, 1447, 20 L. Ed. 2d 491 (1968); *see also Brennan v. Stewart*, 834 F.2d 1248, 1255-56 (5th Cir. 1988).  The substantive protections provided by the First Amendment's incorporation are distinct from and not dependent on the procedural protections afforded by the Fourteenth Amendment's Due Process Clause.  *See Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662 (1986) (noting that, in addition to setting procedural minima for deprivations of life, liberty, or property, the Due Process Clause bars outright "certain government actions regardless of the fairness of the procedures used to implement them").  Thus, a person could receive all the *procedural* due process that they are entitled to under the Fourteenth Amendment, while still having their *substantive* due process rights under the First and Fourteenth Amendments violated.

administrator.  Ark. Code Ann. § 14-14-502.  Arkansas law no longer assigns judicial functions to the quorum court; it has no judicial authority.  The quorum court has no special expertise in the only question it decided, *i.e.*, whether Lemon's discharging Bearden was illegal or constitutional.  No reason appears as to why a federal district court would defer to the Cleburne County Quorum Court on whether Bearden's termination violated the First Amendment; nor is it apparent how a decision of that body could prevent Bearden from having the issues tried by a jury, as he is entitled to do under the Seventh Amendment.

To reiterate, it appears that there is a genuine issue of material fact.  Lemon contends that Bearden knowingly made false statements to the public to the effect that the sheriff had an anti-DWI policy.  Bearden contends that his statements were true.  If so, he could not lawfully be terminated for making those statements.  If not, Bearden could lawfully be terminated for making intentionally false statements to the public about the policy of the sheriff's department.  A jury will have to decide who is telling the truth.

## IV.

Bearden also contends that he was wrongfully discharged in violation of Arkansas law.  It is undisputed that Bearden was an at-will employee.  Under Arkansas law, an at-will employee can be discharged at any time for any reason, except that the employee cannot be discharged in violation of a well-established public policy of the state.  *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 249, 743 S.W.2d 380, 385 (1988).  If Bearden were discharged in violation of the First and Fourteenth Amendments to the Constitution and Article 2, § 6 of the Arkansas Constitution, that would support his claim for wrongful discharge under Arkansas law.  This Court has already held that there is a genuine issue of material fact on that point.  That genuine issue of material fact suffices to defeat

Lemon's motion for summary judgment on the wrongful discharge claim.

Furthermore, according to Bearden's testimony, Lemon threatened to terminate him for making DWI arrests and ordered him to arrange with the prosecutor to have two DWI cases *nolle prossed*. A jury could find from the facts in the record that Bearden was discharged from his employment as a deputy sheriff because he made DWI arrests and disagreed with the sheriff's policy of seeking to have some of those cases *nolle prossed*. If the jury found those facts in favor of Bearden, those facts would support a claim of wrongful discharge under Arkansas law. Therefore, Lemon's motion for summary judgment on Bearden's claim of wrongful discharge will be denied.

## V.

Ark. Code Ann. § 16-118-107 states, "Any person injured or damaged by reason of conduct of another person that would constitute a felony under Arkansas law may file a civil action to recover damages based on the conduct." Bearden contends that he was damaged by conduct of Lemon that would constitute a felony under Ark. Code Ann. § 5-53-109, which provides:

> (a) A person commits the offense of intimidating a witness if he threatens a witness or a person he believes may be called as a witness with the purpose of:
>
> > (1) Influencing the testimony of that person; or
> >
> > (2) Inducing that person to avoid legal process summoning him to testify; or
> >
> > (3) Inducing that person to absent himself from any official proceeding to which he has been legally summoned.
>
> (b) Intimidating a witness is a Class C felony.

There is no evidence that Lemon attempted to influence the testimony of Bearden at any trial. There is no evidence that Lemon induced Bearden to avoid legal process summoning him to testify at any trial. There is no evidence that Lemon induced Bearden to absent himself from any official

proceeding to which he had been legally summoned.  Consequently, there is no evidence that Lemon

violated Ark. Code Ann. § 5-53-109.  Therefore, Lemon's motion for summary judgment is granted

as to Bearden's felony-tort claims.

## VI.

Lemon contends that he is entitled to qualified immunity.  The Eighth Circuit has explained

the qualified immunity doctrine as follows:

> Under the doctrine of qualified immunity, state actors are protected from civil
> liability when "their conduct does not violate clearly established statutory or
> constitutional rights of which a reasonable person would have known." *Harlow v.
> Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (internal
> quotations omitted); *McCaslin v. Wilkins,* 183 F.3d 775, 778 (8th Cir. 1999). The
> qualified immunity inquiry is a two-step process.  First, this Court must ascertain
> whether the plaintiffs have asserted a violation of a constitutional or statutory right.
> *See Munz v. Michael,* 28 F.3d 795, 799 (8th Cir. 1994) (citing *Beck v. Schwartz,* 992
> F.2d 870, 871 (8th Cir. 1993) (per curiam)). Second, we must determine whether that
> constitutional right was clearly established at the time that the plaintiffs were
> discharged. *See Munz,* 28 F.3d at 799. "This court has . . . taken a broad view of what
> constitutes 'clearly established law' for the purposes of a qualified immunity inquiry
> . . . ." *Boswell v. Sherburne County,* 849 F.2d 1117, 1121 (8th Cir. 1988), *cert.
> denied*, 488 U.S. 1010, 109 S. Ct. 796, 102 L. Ed. 2d 787 (1989). "For a right to be
> deemed clearly established, the 'contours of the right must be sufficiently clear that
> a reasonable official would understand that what he is doing violates that right.'"
> *Buckley v. Rogerson,* 133 F.3d 1125, 1128 (8th Cir. 1998) (quoting *Anderson v.
> Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).  However,
> "[i]t is only necessary that the unlawfulness of the official's act [be] apparent in view
> of pre-existing law." *Hall v. Lombardi,* 996 F.2d 954, 958 (1993), *cert. denied*, 510
> U.S. 1047, 114 S. Ct. 698, 126 L. Ed. 2d 665 (1994). Therefore, if the law claimed
> to have been violated was clearly established, the qualified immunity defense
> ordinarily fails, "since a reasonably competent public official should know the law
> governing his conduct." *Harlow,* 457 U.S. at 818-19, 102 S. Ct. 2727.

*Sexton,* 210 F.3d at 909-10.

*Sexton* shows that the constitutional right at issue here was clearly established.  A reasonable

sheriff would know that he cannot discharge a deputy for making truthful comments to the public

about the policy of the sheriff's department, even if the sheriff does not like those comments. *Id.* As noted above, the issue here is a factual one, *i.e.*, whether Bearden's comments were truthful or intentionally false. If they were truthful, they were protected by the First Amendment, and a reasonable sheriff in Lemon's position would have known that they were protected by the First Amendment. If they were intentionally false, they were not protected by the First Amendment, and the issue never arises as to whether the right to make those statements was clearly established.

## VII.

Lemon in his official capacity has moved for summary judgment on Bearden's claim for punitive damages on the ground that a claim against him in his official capacity is in effect a claim against the County, and the County is immune from suit for punitive damages. Bearden concedes the point but states that the sheriff can be liable in his individual capacity for punitive damages. To the extent that the complaint can be read to claim punitive damages against Lemon in his official capacity, summary judgment will be granted on those claims for punitive damages. Summary judgment will be denied as to any claims for punitive damages against Lemon, individually.

## VIII.

Bearden has moved for partial summary judgment on the issue of whether he was terminated by Lemon or by the County Grievance Committee. The undisputed facts show that Lemon made the decision to terminate Bearden, and that the County Grievance Committee reviewed the decision only to determine whether the discharge was in violation of "the law or the constitution." The undisputed facts show that the County Grievance Committee cannot decide to discharge a deputy sheriff; only the sheriff can do that. Therefore, Bearden's motion for partial summary judgment is granted.

**CONCLUSION**

For the reasons stated above, Lemon's motion for summary judgment is GRANTED as to Bearden's felony-tort claim and as to any claims of punitive damages against the County but DENIED as to all other claims. Docket #15. Lemon's motion to strike is also DENIED. Docket #21. Bearden's motion for partial summary judgment is GRANTED. Docket #17.

IT IS SO ORDERED this  6th  day of March, 2006.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

11